UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MARGARITO E., | ) | Case No.  SA CV 18-1962-SP |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| ANDREW M. SAUL, Commissioner of Social Security Administration, | ) | |
| Defendant. | ) | |

**I.**

**<u>INTRODUCTION</u>**

On November 1, 2018, plaintiff Margarito E. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB").  The parties have fully briefed the issues in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents seven disputed issues for decision:  (1) whether the ALJ

properly declined to reopen plaintiff's prior application and so applied res judicata; (2) whether the Administrative Law Judge ("ALJ") properly considered the opinion of a treating psychologist; (3) whether the ALJ properly considered plaintiff's testimony; (4) whether the vocational expert's testimony constituted substantial evidence; (5) whether the ALJ's residual functional capacity ("RFC") assessment of light work was proper; (6) whether the ALJ properly considered lay evidence; and (7) whether the ALJ properly considered an opinion of a treating orthopedic surgeon.  Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 1-24; *see* Defendant's Memorandum in Support of Answer ("D. Mem.") at 3-24.

Having carefully studied the parties' memoranda on the issues in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly exercised her discretion to deny plaintiff's request to reopen his prior application, properly considered the medical opinions, and conducted a proper RFC determination in light of the ALJ's other findings.  The vocational expert's testimony also constituted substantial evidence. But the ALJ failed to properly consider portions of the testimony of plaintiff and his friend.  The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was forty-four years old on the alleged disability onset date, received a sixth grade education in Mexico.  AR at 84, 106.  Plaintiff has past relevant work as a cook.  *Id*. at 97.

On July 7, 2014, plaintiff filed an application for a period of disability and DIB, alleging on onset date of December 26, 2010.  *Id*. at 107.  The application

2

was denied at the initial level on October 10, 2014 ("October 2014 Denial").  *Id*.

On February 6, 2015, plaintiff filed a second application for a period of disability and DIB, again alleging an onset date of December 26, 2010.  *Id*. at 106.  The application was denied initially and upon reconsideration, after which plaintiff filed a request for hearing.  *Id*. at 157-70.

The ALJ held a hearing on October 25, 2017, at which plaintiff appeared and testified.  *Id*. at 78-105.  The ALJ also heard testimony from Kathleen Spencer, a vocational expert.  *See id*. at 97-103.  On February 27, 2018, the ALJ denied plaintiff's claim for benefits.  *Id*. at 21-40.

As an initial matter, the ALJ assumed an implied request from plaintiff to reopen his prior application and denied the request.  *Id*. at 22.  The ALJ then determined the initial denial of the first application on October 10, 2014 was administratively final and binding, and thus for the previously adjudicated period, res judicata applied.  *Id*.

Then applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity from December 26, 2010, the alleged onset date, through December 31, 2015, the date last insured.  *Id.* at 24.

At step two, the ALJ found plaintiff suffered from the following severe impairments: (1) right shoulder rotator cuff tendonitis status post December 2010 arthroscopic surgery; (2) osteoarthritis of the left knee status post surgery; and (3) a mental impairment variously diagnosed as depressive disorder, generalized anxiety disorder, and insomnia.  *Id*. at 25.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1.  *Id.*  at 26.

The ALJ then assessed plaintiff's RFC,[1] and determined plaintiff had the RFC to perform light work, with the limitations that plaintiff could: lift, carry, push, or pull up to 20 pounds occasionally and 10 pounds frequently with his free hand as he uses a cane; frequently push and pull; stand and walk two hours out of an eight-hour workday; sit six hours out of an eight-hour workday; occasionally climb ramps and stairs, balance, stoop, crouch, reach overhead with the right upper extremity, and walk on uneven terrain; frequently reach overhead with the left upper extremity; and work in the presence of occasional exposure to extreme cold. *Id*. at 28-29.  Plaintiff needs to use a cane for balance and support with moderate and long distances; could never climb ladders and scaffolds, kneel, or crawl; and should avoid exposure to unprotected heights and workplace hazard, as well as heavy vibrations.  *Id*. at 29.  The ALJ further determined plaintiff would be most successful in an occupation with no high production quotas and not in a fast paced work environment.  *Id*.  Plaintiff could also be around people but should not have more than superficial interaction with the public.  *Id*.

The ALJ found, at step four, that plaintiff was unable to perform his past relevant work as a cook.  *Id*. at 38.

At step five, the ALJ found there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including mail router, retail marker, and sausage inspector.  *Id*. at 39-40.  Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act.  *Id*. at 40.

---

[1]   Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

Plaintiff filed a timely request for review of the ALJ's decision, but the Appeals Council denied the request for review. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

### III.

### <u>STANDARD OF REVIEW</u>

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.

1  1992)).

2  ## IV.

3  ## DISCUSSION

4  **A.**   **The ALJ Properly Declined to Reopen the Prior Application**

5      Plaintiff argues the ALJ denied him his due process rights when she failed to

6  consider his request to reopen his prior application, and consequently improperly

7  found that the October 2014 Denial was binding.  P. Mem. at 1-2.

8      "A decision not to reopen a prior, final benefits decision is discretionary

9  [and] . . . not subject to judicial review."  *Udd v. Massanari*, 245 F.3d 1096, 1098-

10  99 (9th Cir. 2001) (citing *Califano v. Sanders*, 430 U.S. 99, 107-09, 97 S. Ct. 980,

11  51 L. Ed. 2d 192 (1977)).  An exception to the rule is when the denial is challenged

12  on constitutional grounds.  *Evans v. Chater*, 110 F.3d 1480, 1482 (9th Cir. 1997).

13  A constitutional claim must "implicate a due process right to a meaningful

14  opportunity to be heard."  *Id*. (quoting *Panages v. Bowen*, 872 F.2d 91, 93 (9th Cir.

15  1989)).

16      Here, plaintiff argues the ALJ violated his due process right to be heard.

17  Plaintiff contends the ALJ incorrectly determined he had not made a request to

18  reopen the prior application when he had, in fact, made such a request in a

19  Disability Report completed on February 10, 2015.  *See* AR at 280; *see also id*.,

20  Court Transcript Index.  The ALJ therefore denied him his right to be heard

21  because, according to plaintiff, she did not even consider the request.

22      Plaintiff is correct the ALJ erroneously determined plaintiff had not made a

23  request to reopen the prior application because he did not make an express request

24  at the hearing.  *See id*. at 22.  But the ALJ assumed an implied request for

25  reopening the prior application because plaintiff had alleged an onset date of

26  disability prior to the October 2014 Denial.  *Id*.  The ALJ then considered and

27  denied the implied request because plaintiff had not provided a reason for

28

1 reopening the prior application.[2]  *Id.*  The ALJ's error in not recognizing plaintiff's

2 express request to reopen was therefore harmless and did not violate plaintiff's due

3 process rights.  To the extent plaintiff argues the ALJ erred when she denied his

4 request to reopen the October 2014 Denial, her decision is not reviewable.  *See*

5 *Udd*, 245 F.2d at 1098-99.

6       Accordingly, the ALJ properly applied res judicata to the issue of disability

7 for the previously adjudicated period.

8 **B.   The ALJ Properly Considered Dr. Flores's Opinion**

9       Plaintiff argues the ALJ failed to properly consider the opinion of treating

10 psychologist, Dr. Nelson J. Flores.  P. Mem. at 2-8.  Specifically, plaintiff contends

11 the ALJ's reasons for discounting Dr. Flores's opinion were not specific and

12 legitimate and supported by substantial evidence.  *Id.*

13       In determining whether a claimant has a medically determinable impairment,

14 among the evidence the ALJ considers is medical evidence.  20 C.F.R.

15 § 404.1527(b).[3]  In evaluating medical opinions, the regulations distinguish among

16 three types of physicians:  (1) treating physicians; (2) examining physicians; and

17 (3) non-examining physicians.[4]  20 C.F.R. § 404.1527(c), (e);  *Lester v. Chater*, 81

18 F.3d 821, 830 (9th Cir. 1996) (as amended).  "Generally, a treating physician's

19 opinion carries more weight than an examining physician's, and an examining

20

21     [2]   In his request to reopen, plaintiff argued he should be found disabled

22 because he has numerous knee surgeries, including one after the October 2014

23 Denial.  *See* AR at 280.

24     [3]   All regulations cited in this opinion are applicable to claims filed before

25 March 27, 2017.

26     [4]   Psychologists are considered acceptable medical sources whose opinions are

27 accorded the same weight as physicians'.  20 C.F.R. § 404.1513(a)(2).

Accordingly, for ease of reference, the court will refer to all psychologists as

28 physicians.

7

physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285.  If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830.  If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.*  Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31.  The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

### 1. <u>Treating Physicians</u>

#### a. <u>Dr. Nelson J. Flores</u>

Dr. Flores, a psychologist, treated plaintiff in connection with plaintiff's workers' compensation case from October 12, 2011 through at least December 2016. *See* AR at 1734, 2115-16.  At the initial examination in October 2011, Dr. Flores reported it was easy to develop a rapport with plaintiff and plaintiff: was cooperative; made good eye contact; had normal speech; was tearful; had a sad and anxious mood; and had deficient concentration at times. *See id*. at 802-03.  Dr. Flores administered several tests which indicated plaintiff was anxious and

depressed.  *See id*. at 810-14.  Based on the examination and testing, Dr. Flores diagnosed plaintiff with impairments that included:  depressive disorder, not otherwise specified; anxiety disorder, not otherwise specified, and related insomnia; and psychological factors affecting medical condition.  *Id*. at 803-04. Dr. Flores opined plaintiff was temporarily totally disabled in the workers' compensation context.  *Id*. at 805.  Six months later, in April 2012, Dr. Flores made similar observations and offered virtually the same opinion.  *Id*. at 727-81.

During treatment in 2014 and 2015, plaintiff continued to exhibit, among other things, a sad and anxious mood, bodily tension, and poor concentration.[5]  *See id*. at 815, 912, 1823, 1825.  Plaintiff also complained of thoughts of death, but denied active suicide ideation.  *See id*. at 1823.

On June 4, 2015, Dr. Flores completed a Mental Disorder Questionnaire Form and Mental Assessment.  *Id*. at 1730-39.  Dr. Flores opined plaintiff suffered from major depressive disorder, generalized anxiety disorder, and insomnia.  *Id*. at 1738.  Dr. Flores listed objective findings to support his opinion, including: irritable but cooperative behavior, tearfulness, depressed affect, attention and memory problems, nervousness, apprehension, and bodily tension.  *Id*. at 1731-32. Dr. Flores described plaintiff as having significant problems interacting with others and impulse control.  *See id*. at 1733.  Based on his treatment, Dr. Flores opined plaintiff had mild limitations in his ability to understand, remember, and carry out very short and simple instructions, make simple work related decisions, and ask simple questions or request assistance; mild to moderate limitations in his ability to interact appropriately with the general public, maintain socially appropriate behavior, and to adhere to basic standards of neatness and cleanliness; and moderate limitations in his ability to get along with coworkers or peers, be aware

---

[5]    Dr. Flores indicated plaintiff saw him twice a month.  AR at 1734.  The record contains few treatment notes.

1   of normal hazards and take appropriate measures, and set realistic goals or make

2   plans independently of others.  *See id.* at 1735-38.  Dr. Flores further opined

3   plaintiff would have moderately severe or severe limitations in all other areas,

4   including the ability to: understand, remember, and carry out detailed instructions;

5   maintain attention and concentration for extended periods; sustain an ordinary

6   routine without special supervision; perform activities within a schedule; and

7   appropriately respond to changes in the work place.[6]  *Id.*

8   **b.   Dr. E. Richard Dorsey**

9     Dr. E. Richard Dorsey, a psychiatrist, began treating plaintiff on December

10  2, 2015 at the request of Dr. Flores.  *Id.* at 2205-19.  Dr. Dorsey observed plaintiff

11  exhibited a serious and depressed mood, had depressed thought content and

12  occasionally wept, but had otherwise normal findings.  *Id.* at 2182, 2197, 2209.

13  Dr. Dorsey noted plaintiff was well-focused and able to respond promptly and

14  appropriately.  *See id.* at 2182, 2917.  Dr. Dorsey diagnosed plaintiff with major

15  depression and panic disorder.[7]  *Id.* at 2182, 2215.

16    **2.   Examining Physicians**

17    Dr. Hassan M. Mahfoozi, a psychiatrist, examined plaintiff on November 16,

18  2011 in connection with his workers' compensation claim.  *Id.* at 784-92.  Dr.

19  Mahfoozi stated it was difficult to develop a rapport with plaintiff.  *See id.* at 790.

20  Dr. Mahfoozi observed plaintiff: was resistive, suspicious, and cooperative; had

21  poor eye contact; was anxious, irritable, withdrawn, and sad; had memory

22

23   [6] Over a year after the date last insured, on February 27, 2017, Dr. Flores

24  completed a Mental Capacities Form, in which he reiterated his earlier opinions.

25  AR at 2020.  Dr. Flores opined plaintiff was unable to work because of his
    attention and memory problems, irritability, and insomnia.  *Id.*  Dr. Flores also

26  stated plaintiff socially isolated.  *Id.*

27   [7] Dr. Dorsey's subsequent records contain plaintiff's subjective complaints,

28  but no objective findings.  *See* AR at 2313-31, 2344-53, 2377-81.

1  difficulties; maintained concentration; and had fair judgment. *Id*. Dr. Mahfoozi

2  diagnosed plaintiff with depressive disorder, anxiety disorder, and insomnia. *Id*. at

3  791.

4       Dr. Bong Doan, a consultative psychiatrist, examined plaintiff on September

5  19, 2015. *Id*. at 1842-46. Dr. Doan did not review any medical records. *Id*. at

6  1842. Plaintiff denied receiving any current psychiatric treatment or medication.[8]

7  *See id*. at 1842-43. Dr. Doan observed plaintiff as having a depressed mood with a

8  congruent affect and otherwise normal findings. *See id*. at 1844. Dr. Doan stated

9  plaintiff had no difficulties: interacting with the clinic staff or himself; maintaining

10 composure; or focusing and maintaining attention. *See id*. at 1845. Based on the

11 examination, Dr. Doan diagnosed plaintiff with depressive disorder. *Id*. Dr. Doan

12 opined plaintiff would have no limitations other than mild limitations completing a

13 normal workday or work week. *Id*.

14      Dr. Norma R. Aguilar, a consultative psychiatrist, examined plaintiff on

15 February 4, 2016.[9] *Id*. at 1882-86. Dr. Aguilar reviewed plaintiff's medical

16 records. *See id*. at 1883. Dr. Aguilar observed plaintiff was cooperative, slightly

17 depressed and anxious, and had a constricted affect. *See id*. at 1884. Based on the

18 examination and records, Dr. Aguilar diagnosed plaintiff with persistent depressive

19 disorder. *Id*. at 1885. Dr. Aguilar opined plaintiff was mildly limited in his ability

20 to respond to changes in a routine work setting and moderately limited in his

21 ability to respond to work pressure in a usual work setting, but otherwise had no

22 other non-exertional limitations. *Id*.

23

24      [8]   Plaintiff explained he ran out of medication two months prior and had not

25 been able to see a new psychiatrist. *See* AR at 1842.

26      [9]   Although Dr. Aguilar did not issue her opinion until after the date last

27 insured, "'medical evaluations made after the expiration of a claimant's insured
   status are relevant to an evaluation of the preexpiration condition.'" *Lester*, 81

28 F.3d at 832 (quoting *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir.1988)).

### 3.     **State Agency Physicians**

Dr. Alan Berkowitz and Dr. Jermaine Robertson, state agency physicians, reviewed Dr. Mahfoozi's, Dr. Flores's, and Dr. Doan's reports, as well as plaintiff's questionnaire form.  *See id*. at 119-21, 142-44.  Based on their review, the state agency physicians determined plaintiff did not suffer from a severe mental impairment.  *Id*. at 122, 144.

### 4.     **The ALJ's Findings**

In reaching his RFC determination, the ALJ gave significant weight to the opinions of Dr. Doan and Dr. Aguilar, partial weight to the state agency physicians' opinions, and little weight to Dr. Flores's opinion.  *Id*. at 34-36.  The ALJ gave the greatest weight to Dr. Doan's and Dr. Aguilar's opinions because they were consistent with the evidence as a whole and the clinical findings.  *Id*. at 34-35.  Although the ALJ stated she gave partial weight to the state agency physicians' opinions, she rejected their opinions that plaintiff had a non-severe impairment, noting additional evidence received at the hearing level showed plaintiff's mental impairment was severe.  *See id*. at 35.  And the ALJ gave little weight to Dr. Flores's opinion because plaintiff's self-reported symptoms and limitations were unsupported by the record.  *See id*. at 36.

As an initial matter, contrary to plaintiff's contention, the ALJ did not reject Dr. Flores's opinion because Dr. Flores was a workers' compensation physician.  *See* P. Mem. at 7; Reply in Support of Plaintiff's Complaint ("Reply") at 3.  Indeed, the ALJ expressly stated that she considered all evidence of record, including opinions related to plaintiff's workers' compensation claim and evidence outside of the relevant period of review.  *See* AR at 36.  She only discounted the temporary and percentage based opinions related to the workers' compensation claim because such conclusions are inapplicable in the social security disability setting.  *See id*. at 35-36; *Desrosiers v. Sec'y*, 846 F.2d 573, 576 (9th Cir. 1988)

1    (workers' compensation terminology differed from that used in social security

2    disability cases).  Instead, the ALJ afforded little weight to Dr. Flores's opinion

3    because it was inconsistent with the record and was based on plaintiff's subjective

4    complaints, the credibility of which the ALJ discounted.  *See* AR at 36.

5         First, the ALJ found Dr. Flores's opinion was inconsistent with the evidence

6    in the  record including other providers' treatment notes.  *Id.*  With respect to other

7    providers, they ALJ noted they did not observe the degree of symptoms and

8    limitations Dr. Flores observed.  *See id*.  The ALJ cited three specific examples,

9    and as plaintiff points out, two of these do little to support the ALJ's rejection of

10   Dr. Flores's opinion.  Specifically, the notes of the chiropractor treating plaintiff's

11   knee and the urologist treating a urination problem, while of some value to the

12   extent they record plaintiff's own statements, on balance do not amount to

13   substantial evidence undermining Dr. Flores's findings about plaintiff's mental

14   impairment.  *See id.* at 577, 1550.  The ALJ also specifically cited Dr. Mahfoozi

15   observations, which included that plaintiff was anxious, depressed, and resistive,

16   but overall did not support such severe limitations as Dr. Flores opined.  *See id*. at

17   790.

18        Although not specifically cited, the ALJ also referred to her earlier

19   discussion of the findings of other physicians.  *Id.* at 36; *see id.* at 34-35.  Dr. Doan

20   noted plaintiff had a depressed mood with a congruent affect, but his findings that

21   plaintiff had no difficulty interacting with his staff and focusing directly

22   contradicted Dr. Flores's opinion that plaintiff had social and concentration

23   limitations.  *See id*. at 1844.  Dr. Aguilar also observed plaintiff was slightly

24   depressed and anxious, but had otherwise normal findings.  *See id*. at 1884-85.

25   And Dr. Dorsey observed plaintiff was cooperative, reliable, and well-focused.

26   *See id*. at 2181-82, 2186-87, 2196-97.

27        Similarly, the record contained other evidence inconsistent with Dr. Flores's

28

13

opined limitations.  Contrary to Dr. Flores's opinion that plaintiff socially isolated and would have moderately severe or severe limitations in his ability to sustain an ordinary routine and maintain regular attendance, the record contains multiple references to plaintiff being cooperative, taking his children to school, attending class daily, going to the gym daily, attending regular church services, and having good support from his children.  *See, e.g., id*. at 286, 1731, 1884.

Further, Dr. Flores's own examinations did not necessarily support his opined limitations.  Dr. Flores noted some difficulties with memory and concentration, but nothing that supported moderately severe limitations.  *See id*. at 745, 803, 1736.  Dr. Flores's other findings also did not support the moderate, moderately severe, or severe limitations he opined, including the ability to understand and carry out detailed instructions, perform activities within a schedule, remember locations, or maintain regular attendance.  *See id*. at 1735-38.

The ALJ also implied a second reason for discounting Dr. Flores's opinion – that the opinion relied heavily on plaintiff's subjective complaints and she discounted the credibility of such complaints.  *Id*. at 36; *see Magallanes*, 881 F.2d at 755 (an ALJ need not recite "magic words," a reviewing court may draw inferences from an opinion); *Morgan*, 169 F.3d at 602 ("A physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted.") (internal quotation marks and citation omitted).  As will be discussed below, plaintiff's testimony was partially credible, and thus reliance on plaintiff's representations was not a specific and legitimate reason to give Dr. Flores's opinion less weight.

Accordingly, the ALJ provided a specific and legitimate reason supported by substantial evidence for discounting Dr. Flores's opinion, that the opinion was unreliable because it was unsupported by objective evidence and the record.

## C.    The ALJ Improperly Discounted Part of Plaintiff's Testimony

Plaintiff contends the ALJ improperly discounted his testimony, specifically his lifting and carrying allegation.  P. Mem. at 8-16.  Plaintiff argues his activities of daily living were not a sufficient reason to discount his testimony.[10]  *Id*.

At the hearing, plaintiff testified knee pain was the primary impairment preventing him from working.  AR at 86-87.  Plaintiff testified he had problems with balance, swelling, and weakness.  *Id*. at 89-90.  Plaintiff testified he could sit for 30 minutes before needing to stand and stretch, walk for 15 minutes with a cane, stand for 15 minutes, lift and carry 10 pounds, and reach with his right arm at or below the shoulder level for 30 seconds.  *See id*. at 91-93.  Plaintiff testified he attended two-and-a-half-hour long English language classes four days a week.  *Id*. at 88.  In his Function Report, dated March 16, 2015, plaintiff stated he could stand for 30 minutes, went to school and the gym daily, could walk for half a mile, and could not squat.  *See id*. at 282-87.  Although plaintiff checked boxes indicating his impairments affected his lifting abilities, he did not explain how his abilities were impacted.  *See id*. at 287.

The ALJ must make specific credibility findings, supported by the record.  Social Security Ruling ("SSR") 96-7p.  To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id*. at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her

---

[10]   Plaintiff also argues the ALJ failed to consider his obesity in her credibility analysis, but failed to develop this argument.  P. Mem. at 16.

1  symptoms only by offering specific, clear and convincing reasons for doing so."

2  *Smolen*, 80 F.3d at 1281; *accord Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir.

3  2003).  The ALJ may consider several factors in weighing a claimant's testimony,

4  including:  (1) ordinary techniques of credibility evaluation such as a claimant's

5  reputation for lying; (2) the failure to seek treatment or follow a prescribed course

6  of treatment; and (3) a claimant's daily activities.  *Tommasetti v. Astrue*, 533 F.3d

7  1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

8       At the first step, the ALJ found plaintiff's medically determinable

9  impairments could reasonably be expected to cause the symptoms alleged.  AR at

10  33.  At the second step, the ALJ provided three reasons for discounting plaintiff's

11  credibility: (1) plaintiff's alleged symptoms and limitations were inconsistent with

12  his activities of daily living; (2) the objective medical evidence did not support the

13  severity of his symptoms; and (3) lack of treatment.  *See id*. at 29-39.  Plaintiff

14  only disputes the ALJ's first two findings.

15       First,  the ALJ found plaintiff was able to engage in activities of daily living

16  that were inconsistent with his alleged symptoms.  *See id*. at 32-33.  Inconsistency

17  between a claimant's alleged symptoms and her daily activities may be a clear and

18  convincing reason to find a claimant less credible.  *Tommasetti*, 533 F.3d at 1039;

19  *Bunnell*, 947 F.2d at 346.  But "the mere fact a [claimant] has carried on certain

20  daily activities, such as grocery shopping, driving a car, or limited walking for

21  exercise, does not in any way detract from her credibility as to [his] overall

22  disability."  *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).  A claimant

23  does not need to be "utterly incapacitated."  *Fair v. Bowen*, 885 F.2d 597, 603 (9th

24  Cir. 1989).

25       Here, the ALJ listed multiple examples of plaintiff's activities of daily living

26  she found to be inconsistent with plaintiff's symptoms.  But the majority of the

27  activities cited did not detract from his credibility.  First, the activities of daily

28

16

1  living related to personal care and home life such as plaintiff having no difficulty

2  washing, getting on and off the toilet, writing a note, watching television, and

3  turning faucets and off were not inconsistent with plaintiff's symptoms.  *See* AR at

4  33.  Second, the ALJ cited that plaintiff confirmed he could lift up to 20 pounds

5  even though it was recommended he limit lifting to no more than 10 pounds.  *See*

6  *id*. at 32.  Although the ALJ correctly noted plaintiff reported he could lift 20

7  pounds in June 2012, by September 2015, plaintiff reported he experienced

8  moderate to severe pain lifting 20 pounds.  *See id*. at 416, 1754.  Finally, the ALJ

9  correctly noted plaintiff was walking to all of his appointments in September 2014

10  despite his reports of pain and only being capable of walking 15 minutes or half a

11  mile before needing to rest.  *See id*. at 32, 91, 287.  But plaintiff did not state how

12  far he had to walk or how much rest he required during those walks.

13       Nevertheless, some of the inconsistencies between plaintiff's alleged

14  symptoms and activities cited by the ALJ were clear and convincing reasons to

15  find some of plaintiff's testimony less than credible.  Plaintiff testified he could

16  only sit for 30 minutes but he was able to attend language classes for two-and-a-

17  half hours each day.  *See id*. at 32, 88, 91.  As for his alleged lifting limitation,

18  plaintiff reported he could reach at or below his shoulder level with his right arm

19  for only 30 seconds, but he went to the gym daily and did mostly upper body

20  exercises.  *See id*. at 93, 1377.  Although it is possible plaintiff could sit and stand

21  in class at will and did not perform exercises requiring him to reach overhead with

22  his right shoulder, the evidence in the record can reasonably support the ALJ's

23  finding with respect to these portions of plaintiff's testimony.

24       The ALJ's second ground for discounting plaintiff's testimony was his

25  allegations were not supported by the objective medical evidence.  *See id.* at 30-36;

26  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (lack of corroborative

27  objective medical evidence may be one factor in evaluating credibility).  With

28

17

1  regard to his shoulders, following his surgeries, the examination findings were

2  mostly normal other than some occasional tenderness, reduced range of motion,

3  and one positive impingement finding in the right shoulder.  *See id*. at 1167, 1266,

4  1576, 1755.  None of these objective findings support greater lifting limitations

5  than the ALJ determined.  The only physicians who offered opinions as to

6  plaintiff's upper extremity limitations determined he could lift up to 20 pounds.

7  *See id*. at 123, 146, 1578.

8       In contrast, the objective evidence supported plaintiff's alleged symptoms

9  regarding his knee.  Plaintiff underwent four knee surgeries between December

10  2011 and December 2014.  *See id*. at 487-88, 509-10, 1081-83, 1346-48. The ALJ

11  acknowledged the four surgeries, but noted imaging reflected no re-tear of the

12  meniscus, no fracture or dislocation, no calcification of the soft tissues, and the

13  medial and lateral joint compartments were well maintained.  *See id*. at 31.  The

14  ALJ also noted the examinations revealed some tenderness, but no patellofemoral

15  joint crepitus and full range of motion in April 2013, a normal gait in January

16  2015, the ability to do heel and toe walk in September 2015, and that he was doing

17  well with his recovery until February 2015.  *See id*.  Yet although there were some

18  normal findings as noted by the ALJ, physicians continued to observe findings

19  supporting knee pain after his fourth surgery.  *See id*. at 1070 (tenderness,

20  crepitus), 1756-57 (50% of normal squat, pain, tenderness, crepitus, positive grind

21  testing), 1793 (antalgic gait, tenderness, wasting of left quadracep, decreased range

22  of motion in left knee), 1842 (limping with cane).  Indeed, in September 2015, a

23  physician determined plaintiff needed a total joint replacement and conversion of

24  the unicompartment to total knee.  *Id*. at 1793.  Thus, the objective medical

25  evidence, along with his physician's treatment recommendation, supported

26  plaintiff's symptoms regarding his knee but not his shoulders.

27       As for plaintiff's mental health, plaintiff testified he twice wanted to kill

28

himself, had negative thoughts, was depressed, had anxiety, and had memory and concentration issues. *Id*. at 94-95. The objective findings consistently showed plaintiff had a depressed mood and was anxious, but only Dr. Flores's findings fully supported plaintiff's testimony. As discussed above, the other physicians all observed relatively normal findings. *See id*. at 1844, 1884-85, 2182-83, 2201-02, 2209. Taking all the objective findings together, there was support for plaintiff's testimony concerning his anxiety and depression, but the ALJ reasonably determined there was insufficient evidence of his other alleged mental limitations.

The ALJ's third ground for the adverse credibility was lack of treatment. *Id*. at 33. The ALJ cited a September 2014 report by plaintiff's treating chiropractor in which he indicated plaintiff was not receiving chiropractic treatment, physical therapy, acupuncture, or home therapy. *See id.* at 620. Failure to follow prescribed treatment may be a reason to discount a claimant's subjective complaints, but here, the record does not reflect whether any of these treatments were prescribed at that time. The fact plaintiff was not receiving those specific treatments does not by itself undermine his credibility, particularly in light of the fact that he had four knee surgeries, two shoulder surgeries, and a physician recommended a fifth knee surgery.

On balance, the ALJ erred in part in discounting plaintiff's testimony. The ALJ cited some activities that were inconsistent with and objective evidence that did not support plaintiff's alleged symptoms regarding his shoulders and some mental limitations, but the ALJ failed to cite clear and convincing reasons for discounting plaintiff's testimony in its entirety, particularly with respect to his knee.

**D.      The Vocational Expert's Testimony Constituted Substantial Evidence**

Plaintiff argues the testimony of the vocational expert ("VE") did not constitute substantial evidence. P. Mem. at 17-21.  Specifically, plaintiff contends portions of the VE's testimony were unsupported or unbelievable. *Id*.  Plaintiff also contends the ALJ posed an incomplete hypothetical because she failed to include his illiteracy. *Id*. at 20-21.

At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other gainful activity. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).  To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can perform, given his or her age, education, work experience, and RFC.  20 C.F.R. § 404.1512(f).  The Commissioner may satisfy this burden through the testimony of a VE. *Lounsburry*, 468 F.3d at 1114.

In response to a hypothetical by the ALJ that includes the limitations the ALJ found credible, a VE may testify as to "(1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).  "A VE's recognized expertise provides the necessary foundation for his or her testimony." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  The VE is not required to provide the underlying data for her numbers or explain the methodology of how she reached these numbers. *Ford v. Saul*, 950 F.3d 1141, 1158-59 (9th Cir. 2020); *see Xiong v. Colvin*, 2014 WL 3735358, at *9 (E.D. Cal. Jul. 28, 2014).  VE testimony is substantial evidence. *See Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995) ("'[T]he ALJ was within his rights to rely solely on the vocational expert's testimony.'") (quoting *Conn v. Sec'y*, 51 F.3d 607, 610 (6th Cir. 1995)); *see also Bayliss*, 427 F.3d at 1218, n.4 (Federal Rules of Evidence

do not apply in social security hearings).  But where the VE testimony is fundamentally flawed, remand is appropriate.  *See, e.g., Farias v. Colvin*, 519 Fed. Appx. 439, 440 (9th Cir. 2013) (remand required where VE provided employment data for a different occupation than the one he opined claimant could perform).

ALJs routinely rely on the Dictionary of Occupational Titles ("DOT") "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); *see also* 20 C.F.R. § 404.1566(d)(1) (DOT is a source of reliable job information).  The DOT is the rebuttable presumptive authority on job classifications.  *Johnson*, 60 F.3d at 1435.  An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor.  *Massachi*, 486 F.3d at 1152-53 (citing SSR 00-4p).

At the hearing, the VE here testified plaintiff could perform the jobs of mail router, retail worker, and sausage inspector.  AR at 99.  The VE testified these jobs were classified as light work but allowed for a sit/stand option, and that the number of jobs provided were the full number with no erosion.[11]  *Id*. at 99-100.  The VE also testified that a hypothetical person with plaintiff's RFC could not perform the full range of light jobs.  *Id.* at 100.  The VE further testified that a person who could only sit for 30 minutes at a time before needing to get up and walk around or stretch for 10 minutes or was off-task more than 20 percent of the time could not perform the identified jobs.  *Id*. at 101.  And, finally, the VE testified that the job numbers would be eroded by 50 percent if the hypothetical person had a limited ability to communicate in English.  *Id*. at 101-02.  The VE testified her opinion was consistent with the DOT.  *Id.* at 102.

---

[11]  It is unclear what was the VE's exact testimony regarding erosion.  The court reporter indicated part of the testimony was inaudible.  *See* AR at 100.

1    Plaintiff contends the VE's testimony cannot constitute substantial evidence

2  because her testimony was inconsistent with the DOT, her testimony was contrary

3  to social security rulings, she failed to answer questions about job erosion, she

4  failed to provide the basis for her testimony, and her testimony was unbelievable.

5  P. Mem. at 17-21.  In other words, plaintiff argues the VE testimony was

6  fundamentally flawed.

7    Plaintiff premises his arguments, in part, on SSR 83-10, which specifies,

8  among other things, that the primary difference between sedentary and most light

9  jobs is a job will be classified as light work "when it requires a good deal of

10  walking or standing,"  and "when it involves sitting most of the time but with some

11  pushing and pulling of arm-hand or leg-foot controls, which required greater

12  exertion than in sedentary work."  SSR 83-10.  Plaintiff construes SSR 83-10 as

13  meaning that one of the following must be present to constitute light work: (1) a

14  good deal of standing or walking (up to six hours); (2) sitting but with pushing or

15  pulling or leg controls; or (3) production pace work; and plaintiff argues none of

16  the VE identified jobs falls into those categories.  P. Mem. at 17-18, 20.  Instead,

17  plaintiff contends the identified jobs could not be performed with a limitation to

18  two hours standing or walking.  *Id*. at 18.  The VE's testimony that they had a

19  sit/stand option was therefore inconsistent with the DOT and an indication they

20  were modified to be performed at a sedentary level.  *Id*. at 18-20.  The modification

21  thus so significantly erodes the occupational base that the sedentary work base

22  should have been applied instead.  *See id*. at 18-19 (citing SSR 83-12).

23    Plaintiff's argument is mere speculation.  Six hours of standing or walking is

24  not required for all jobs classified as light work, and jobs classified as light work

25  are not modified to be performed as sedentary work simply because they have a

26  sit/stand option.  "The DOT lists maximum requirements of occupations as

27  generally performed, not the range of requirements of a particular job as it is

28

22

1    performed in specific settings.  A VE, VS, or other reliable source of occupational

2    information may be able to provide more specific information about jobs or

3    occupations than the DOT." SSR 00-4p.  That is precisely what the VE did here.

4    The VE testified the identified occupations were classified as light work by the

5    DOT, and although the DOT did not specify, all of them could be performed with a

6    sit/stand option with no erosion.  AR at 99-100.  The fact that plaintiff disagrees

7    with the DOT classification and the VE's testimony is not a sufficient basis to

8    challenge the testimony.

9          Plaintiff also argues the hypothetical was incomplete because the ALJ failed

10   to include his illiteracy in the English language.  P. Mem. at 20-21; *see Hill v.*

11   *Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) ("'If a vocational expert's

12   hypothetical does not reflect all the claimant's limitations, then the expert's

13   testimony has no evidentiary value to support a finding that the claimant can

14   perform jobs in the national economy.'") (quoting *Matthews v. Shalala*, 10 F.3d

15   678, 681 (9th Cir. 1993).  In the decision, the ALJ found plaintiff had a limited

16   ability to communicate and "is considered in the same way as an individual who is

17   illiterate in English."  AR at 38.  The ALJ noted that although plaintiff reported he

18   could not speak, understand, read, or write English, he testified that he understood

19   some English and that he took English language classes.  *Id*. at 38-39; *see also id*.

20   at 115-16.  Nevertheless, the ALJ failed to include any language limitations in the

21   hypothetical.  *See id* at 98-99.  This error was harmless.  Plaintiff posed a

22   hypothetical with his RFC and a limited ability to communicate English ability to

23   the VE, to which she responded there would be 50 percent erosion – or still a

24   significant number of jobs.  *Id.* at 101-02; *see id.* at 99.

25         In sum, plaintiff fails to demonstrate the VE's testimony was fundamentally

26   flawed.  The VE's testimony therefore constituted substantial evidence.

27

28

**E.**    <u>The ALJ Was Not Required to Follow POMS Guidance</u>

Plaintiff argues the ALJ improperly classified plaintiff as capable of light work rather than sedentary work in her RFC determination. P. Mem. at 21-22. Had the ALJ found plaintiff was limited to sedentary work, he would been found disabled pursuant to the Medical Vocational Guidelines found at 20 C.F.R. part 404, Subpart P, Appendix 2 ("Grid"). *Id*. at 21-22. Plaintiff argues that in the version of Program Operations Manual System ("POMS") effective in 2016, POMS DI 25016.006 found, in a particular example, a 4-hour limitation in standing/walking so significantly eroded the occupational base of light work that the sedentary rule would be used as a framework instead. *Id*. at 21. Plaintiff also contends the ALJ failed to consider the state agency and treating physician's opinions that he was limited sedentary work. *Id*. at 22.

POMS "constitutes an agency interpretation that does not impose judicially enforceable duties on either this court or the ALJ." *Lockwood v. Comm'r*, 616 F.3d 1068, 1073 (9th Cir. 2010). Such interpretations are persuasive but not binding. *See Carillo-Yeras v. Astrue*, 671 F.3d731, 735 (9th Cir. 2011); *Lockwood*, 616 F.3d at 1073. Therefore, even if the ALJ's analysis was contrary to POMs, that was inconsequential. Moreover, plaintiff cites to an example in a version of POMS that was no longer in effect at the time of the decision. Plaintiff fails to explain why the ALJ should have relied on guidance that was no longer effective at the time of the decision. *See Black v. Berryhill*, 2018 WL 6184605, at *12 (E.D. Cal. Nov. 27, 2018) (plaintiff failed to show why the ALJ was required to follow guidance effective after the date of his decision).

To the extent plaintiff argues the ALJ erred by rejecting opinions plaintiff was limited to sedentary work, his argument is without merit. Plaintiff argues the "state agency" and his treating chiropractor opined he was restricted to sedentary work. P. Mem. at 22. But this argument is not supported by the record. Neither of

the state agency physicians restricted plaintiff to sedentary work.  *See* AR at 123, 146.  Instead, an agency analyst assessing vocational factors upon reconsideration classified plaintiff as sedentary.  *See id.* at 149-50.  As for plaintiff's treating chiropractor, he limited plaintiff to sedentary work in three progress reports dated November 2016 through February 2017, and opined plaintiff should be off work in prior progress reports.  *See, e.g, id.* at 2222, 2226, 2228, 2237, 2242.  Contrary to plaintiff's contention, the ALJ considered the chiropractor's findings and observations, but afforded little weight to the temporary and percentage based opinions because workers' compensation guidelines and terminology differed from that used in the social security disability context.  *See id.* at 35-36; *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1104-05 (C.D. Cal. 2002).

In sum, in light of the ALJ's other findings, the ALJ did not err by finding plaintiff was capable of performing light work.  But upon reconsideration of plaintiff's testimony, those findings could change.

**F.**     **The ALJ Failed to Properly Specify the Weight Accorded to the Lay Testimony**

Plaintiff contends the ALJ erred when she failed to specify the weight given to a statement from his friend, Jose Gonzales.  P. Mem. at 22-23.

"[L]ay testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence and therefore *cannot* be disregarded without comment."  *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006) (internal quotation marks, ellipses, and citation omitted); *see Smolen*, 80 F.3d at 1288; *see also* 20 C.F.R.§ 404.1513(d)(4) (explaining that the Commissioner will consider all evidence from "non-medical sources," including "spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy").  The ALJ may only discount the testimony of lay witnesses if she provides specific "reasons that are germane to each witness."  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.

1993); *see Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and give reasons germane to each witness for doing so.").

In a third party function report dated March 30, 2015, Gonzales stated he attended college (English language classes) with plaintiff; he observed plaintiff had a problem with his knee; plaintiff's knee pain caused difficulties with sleeping, personal care, and performing housework; plaintiff drove, cooked, took care of his children, and attended church; and plaintiff needed to rest after walking 15 minutes. AR at 296-304. The ALJ expressly stated she considered the statement from Gonzales, but failed to specify what weight she gave his testimony. For the most part, the ALJ's failure to specify the weight given Gonzales's statement was harmless. Based on her discussion, it appears that the ALJ gave weight to the majority of Gonzales's observations as she incorporated the activities observed by Gonzales. But the ALJ did not adopt the one specific limitation Gonzales opined, which was that plaintiff need to rest after 15 minutes of walking. *Id*. at 301. The ALJ was required to cite a germane reason for rejecting Gonzales's observation. Her failure to do so was error that was not harmless.

## G.   The ALJ Did Not Have to Discuss Non-Probative Evidence

Plaintiff argues the ALJ improperly failed to consider the opinion of Dr. A. Michael Moheimani, a treating orthopedic surgeon, specifically, his opinion that plaintiff should lift no more than 10 pounds. P. Mem. at 23-24.

Dr. Moheimani treated plaintiff's shoulder in 2011 and 2012 in connection with a separate workers' compensation claim. *See* AR at 357, 415. In workers' compensation progress reports from January through June 7, 2012, Dr. Moheimani opined plaintiff should be restricted from pushing, pulling, and lifting greater than 10 pounds, as well as overhead reaching with the right shoulder. *See id*. at 363,

1  368, 373, 378, 383.  On June 22, 2012, Dr. Moheimani observed plaintiff had a

2  slight decreased range of motion in the cervical spine, tenderness in the right

3  shoulder, and decreased range of motion in both shoulders, more acute in the right.

4  *See id*. at 419-20.  Dr. Moheimani updated his working restrictions to no pushing,

5  pulling, or lifting more than 20 pounds, and no overhead work.  *Id*. at 423.

6      As discussed above, the ALJ determined res judicata applied to the October

7  2014 Denial so would not reconsider that previously adjudicated period.  *Id*. at 22.

8  The ALJ would consider the medical records from the previously adjudicated

9  period only to the extent they were probative of plaintiff's medical condition

10  through the date last insured.  *Id*. at 30.

11      As an initial matter, the ALJ discussed the January through June 7, 2012

12  progress reports.  Many of the exams were performed and progress reports written

13  by Eric Guevara, Dr. Moheimani's physician's assistant, and then reviewed and

14  signed by Dr. Moheimani  *See id*. at 369, 373, 378.  The ALJ specifically discussed

15  and rejected Guevara's April 2012 opinion that plaintiff should not push, pull, or

16  life more than 10 pounds.  *See id*. at 36.  Plaintiff did not dispute the little weight

17  the ALJ gave Guevara's April 2012 opinion.

18      Moreover, it unclear how probative Dr. Moheimani's April 2012 opinion is.

19  The opinion was rendered over two years prior to the relevant period.  Although

20  plaintiff complained of shoulder pain in a few instances, plaintiff did not seek

21  treatment for his shoulders.  Most important, plaintiff completely ignores Dr.

22  Moheimani's most recent opinion in the record.  In a permanent and stationary

23  report dated June 22, 2012, Dr. Moheimani updated his opinion and restricted

24  plaintiff from pushing, pulling, or lifting more than 20 pounds.  *Id*. at 423.

25  Therefore, the earlier temporary opinions were not probative.

26      Accordingly, the ALJ did not err.  Not only did the ALJ discuss and reject an

27  earlier, temporary opinion, it was not probative because Dr. Moheimani issued a

28

1  subsequent updated opinion.

2  **V.**

3  **REMAND IS APPROPRIATE**

4      The decision whether to remand for further proceedings or reverse and

5  award benefits is within the discretion of the district court.  *McAllister v. Sullivan*,

6  888 F.2d 599, 603 (9th Cir. 1989).  It is appropriate for the court to exercise this

7  discretion to direct an immediate award of benefits where: "(1) the record has been

8  fully developed and further administrative proceedings would serve no useful

9  purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting

10  evidence, whether claimant testimony or medical opinions; and (3) if the

11  improperly discredited evidence were credited as true, the ALJ would be required

12  to find the claimant disabled on remand."  *Garrison v. Colvin*, 759 F.3d 995, 1020

13  (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with

14  instructions to calculate and award benefits).  But where there are outstanding

15  issues that must be resolved before a determination can be made, or it is not clear

16  from the record that the ALJ would be required to find a plaintiff disabled if all the

17  evidence were properly evaluated, remand for further proceedings is appropriate.

18  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*,

19  211 F.3d 1172, 1179-80 (9th Cir. 2000).  In addition, the court must "remand for

20  further proceedings when, even though all conditions of the credit-as-true rule are

21  satisfied, an evaluation of the record as a whole creates serious doubt that a

22  claimant is, in fact, disabled."  *Garrison*, 759 F.3d at 1021.

23      Here, remand is required to permit the ALJ to reconsider the testimony.  On

24  remand, the ALJ shall reconsider plaintiff's testimony and either credit his

25  subjective complaints or provide clear and convincing reasons for rejecting them,

26  and reconsider the lay testimony and either credit it or provide germane reasons

27  supported by substantial evidence for rejecting it.  The ALJ shall then reassess

28

28

plaintiff's RFC, and proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: April 29, 2020

_____

SHERI PYM
United States Magistrate Judge

29